Dear Mr. Rush:
This office is in receipt of your request for an Attorney General's opinion regarding the disposition of tax revenues received in excess of restricted fund requirements.
It is our understanding that in 1984 the voters of the East Ascension Parish Hospital Service District (the "District") authorized the levy of ad valorem taxes for the purpose of funding the expansion and remodeling of the Ascension Parish Hospital and the issuance of general obligation bonds in connection therewith. In February of 1994, the Board of Commissioners of the District authorized a call for the redemption of the bonds and directed the Assessor to cease collection of the tax. In addition, the Board of Commissioners authorized an expenditure of $1,712,192 from the District's General Operating Account to supplement the accrued tax revenues in order that the bond indebtedness could be paid off in advance. During the next few months several payments were made to the District representing previous tax assessments that were either paid late or from bankruptcy determinations, etc.
You have requested that this office address the District's options with regard to the use of the late payments. In particular, you are interested in determining whether the late payments are required to be repaid to the taxed entities or whether the late payments can be used to refund the Hospital's General Operating Fund Account.
It has long been the opinion of this office that tax revenues dedicated to the repayment of general obligation bonds can only be used for the payment of debt service. Attorney General's Opinion Nos. 88-430, 88-281, 83-707, 75-1034. See also Attorney General's Opinion Nos. 93-294, 93-211. These opinions provide that subject to limited exceptions, excess taxes collected for the purpose of retiring general obligation bonds should be returned ratably to the taxpayers.
However, none of those opinions address the use of excess tax collections to reimburse an advance of general fund monies utilized to retire general obligation bonded indebtedness early. Furthermore, the undersigned was unable to locate any statutory provisions or jurisprudence which address this issue. It is noteworthy that an opinion written by Mr. Carroll Buck to the Parish of West Feliciana on March 13, 1958 addresses a situation similar to the one you present. Mr. Buck's opinion pertinently provides:
 ". . . we are inclined to the view that a part of the general fund of the parish, not otherwise encumbered, may be used as an advance to take care of the default which will occur under the circumstances set forth by you, with reimbursement to be made out of the taxes levied and collected in the road district to cover this deficit or default, for the year 1958." (Atty.Gen.Ops. — March 1, 1958 to March 15, 1960, pg. 233).
Although the District was not in danger of default when its general fund monies were used to retire its bonds, savings to the District, and to its taxpayers, were surely generated by the early retirement of the bonds.
Based upon the foregoing, it is the opinion of this office that the late tax payments received by the District after retirement of its bonds can be used to refund the Hospital's General Operating Fund Account for general fund monies used for early retirement of the bonds.
Trusting this has adequately addressed your concerns, we remain,
Yours very truly,
 Richard P. Ieyoub Attorney General
 By: Jeanne-Marie Zeringue Barham Assistant Attorney General